

RECEIVED

AUG 2 6 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

BY: _____

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

---

ALFRED MILLER CONTRACTING
COMPANY and TECON SERVICES, INC.

CIVIL ACTION No. 13-00084

VERSUS

JUDGE DONALD E. WALTER

CARBOLINE CO.; BP CORP.
N.A. INC.; BP PRODUCTS N.A. INC.;
FOSTER WHEELER USA CORP.;
FLUOR ENTERPRISES, INC.; TRINITY
STEEL FABRICATIONS, INC.; SCHUFF
STEEL—GULF COAST, INC.; SCHUFF
STEEL CO.; DYNAMIC INDUSTRIES, INC.;
and LAND COAST INSULATION, INC.

MAGISTRATE JUDGE KAY

---

### MEMORANDUM RULING

Before the Court is a motion to remand [Doc. 20] filed on behalf of Plaintiffs, Alfred Miller

Contracting Company ("AMC") and Tecon Services, Inc. ("Tecon"). Defendant Carboline Company

("Carboline") filed an opposition [Doc. 61], which Defendants BP Corporation North America Inc.

("BP Corporation") and BP Products North America Inc. ("BP Products") (collectively "BP

Defendants") joined [Doc. 65]. Defendant Trinity Steel Fabrications, Inc. ("Trinity") filed a pleading

captioned "response to motion to remand," [Doc. 62] essentially joining in Plaintiffs' motion to

remand. Plaintiffs filed a reply brief in support of their motion to remand [Doc. 70]. Carboline then

filed a reply to Trinity's response to the motion to remand [Doc. 81], and a sur-reply to Plaintiffs'

reply brief [Doc. 85].

For the reasons that follow, Plaintiffs' motion to remand [Doc. 20] is hereby **GRANTED.**

1

## I. BACKGROUND FACTS[1]

This case involves a dispute arising out of the BP Defendants' construction project in Whiting, Indiana (the "BP Project"). The BP Defendants sought to have a fireproofing material, Pyrocrete® 241 ("Pyrocrete"), applied to steel members that would ultimately be installed at the BP Project.

The BP Defendants contracted, through their agents Fluor Enterprises, Inc. ("Fluor") and Foster Wheeler USA Corporation ("Foster Wheeler"), with Trinity, Shuff Steel—Gulf Coast, and Schuff Steel Co. (collectively "Schuff") to supply structural steel for the BP project.[2] [Doc. 60-1 at 1]. Trinity and Schuff entered into a contract with AMC, which provided that AMC would acquire and install Pyrocrete on the structural steel for the BP Project at AMC's facility in Lake Charles, Louisiana. [Doc. Doc. 1-12, ¶17].

---

[1] Carboline asserts fraudulent joinder as the basis for removal in this case. In assessing whether parties were fraudulently joined for the purposes of defeating diversity jurisdiction, the district court is to construe all disputed factual issues in favor of the plaintiff. *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983). Therefore, the majority of the background facts recited herein is derived from Plaintiffs' state court petition and briefs.

[2] There appears to be a dispute between the parties as to whether the BP Defendants collectively contracted with Trinity and Schuff or whether BP Products, alone, entered into the contract. Given that factual disputes must be construed in Plaintiffs' favor, the Court will assume the BP Defendants collectively entered into the contracts.

Additionally, Plaintiffs appear to contradict themselves as to which Schuff Defendant entered into the contract with the BP Defendants and, in turn, with the Plaintiffs. In their state court petition, Plaintiffs assert that Schuff Steel—Gulf Coast and Schuff Steel Co. are sometimes referred to collectively as "Schuff." [Doc. 1-12, 2.h]. Nevertheless, in Plaintiffs' Motion to Remand, they allege that the contracts AMC and Tecon entered into were with Schuff Steel—Gulf Coast only. [Doc. 21 at 6]. The Court is unaware of any specific allegations against Schuff Steel Co. and the Court does not have the benefit of reviewing the contracts themselves since this analysis is constrained to the pleadings. Carboline represents that these contracts were with Schuff Steel Co., not Schuff Steel—Gulf Coast. [Doc. 61-1 at 1]. Accordingly, the Court will assume that the contracts were between the BP defendants, Schuff Steel—Gulf Coast and Schuff Steel Co.

The BP Defendants entered into a separate contract, through their agent Fluor, with Schuff to supply structural steel for the BP Project. Plaintiff Tecon entered into a contract with Schuff to install Pyrocrete on the structural steel Schuff was to supply to the BP Defendants. Both AMC and Tecon entered into a contract with Carboline to purchase the Pyrocrete needed to fulfill Plaintiffs' obligations under their respective contracts with Trinity and/or Schuff. Carboline shipped the Pyrocrete to AMC and Tecon, who then applied the Pyrocrete to the structural steel.

Some of the fireproofed steel was then sent to Defendant Dynamic Industries, Inc. ("DII") who assembled the structural steel into modules by connecting the steel beams with steel blockouts. DII then contracted with Defendant Land Coast Insulation, Inc. ("Land Coast") to apply Pyrocrete to the steel blockouts used to assemble the modules.

At some point after Land Coast applied Pyrocrete to the blockouts, Pyrocrete applied by AMC, Tecon, and/or Land Coast began to show signs of deterioration. The BP Defendants reported the problems to all parties of interest and suggested they enter into a Tolling Agreement in order to allow a full investigation. Shortly thereafter, BP Corporation, Fluor, Foster Wheeler, Trinity, Schuff Steel—Gulf Coast, Carboline, AMC, and Tecon entered into a Tolling Agreement. [Doc. 61-4]. While the agreement remained in effect the parties agreed not to initiate any adversary proceedings. The parties agreed the Tolling Agreement would remain in force through October 15, 2012, or 30 days from a party's written notice that it intended to terminate the agreement.[3] [Doc. 61-4].

On November 1, 2012, Carboline gave notice of intent to withdraw from the Tolling Agreement, thereby terminating the agreement as of Saturday, December 1, 2012. Plaintiffs AMC

---

[3] The Tolling Agreement was extended by mutual consent through October 15, 2013 unless terminated by any Party. [Doc. 61-5].

3

and Tecon filed this action in the 14th Judicial District Court, Parish of Calcasieu, State of Louisiana

on Saturday December 1, 2012 at 12:00 AM, naming as Defendants Carboline, the BP Defendants,

Foster Wheeler, Fluor, Trinity, Schuff Steel—Gulf Coast, Schuff Steel Co., DII, and Land Coast.

[Doc. 1-12]. Plaintiffs seek both declaratory and coercive relief against Carboline. Plaintiffs also

pray for declaratory judgments implicating Carboline's co-defendants, such that Plaintiffs are not

liable to the BP Defendants, Schuff, Trinity, or any other party, "whether in indemnity or otherwise,"

for damages caused by the Pyrocrete. [Doc. 1-12, ¶59].

Carboline removed the case to this Court on January 11, 2013, claiming this Court has

diversity of citizenship jurisdiction under 28 U.S.C. § 1332. Specifically, Carboline claims each of

its co-defendants were improperly joined, and that complete diversity exists when the citizenship of

the non-diverse parties is disregarded.

## II. LAW AND ANALYSIS

Generally, a party may remove an action if the federal court would have original jurisdiction

over the case. 28 U.S.C. § 1441(a). District courts have jurisdiction over suits between citizens of

different states when the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). In this

case, it is undisputed that the amount in controversy exceeds $75,000.

A corporation is deemed a citizen of the state by which it was incorporated, and the state

where it has its principal place of business. 28 U.S.C. § 1332(c)(1). Here, the citizenship of the

parties is generally agreed upon, with one exception.

Plaintiff AMC is a Louisiana Corporation with its principal place of business in Louisiana.

Plaintiff Tecon is incorporated in Texas, and has its principal place of business in Texas.

Carboline was incorporated in Delaware and maintains its principal place of business in

4

Missouri.  BP Corporation was incorporated in Indiana and has its principal place of business in

Texas. BP Products was incorporated in Maryland and has its principal place of business in Illinois.

Foster Wheeler was incorporated in Delaware and has its principal place of business in Texas.  Fluor

was incorporated in California and has its principal place of business in Texas.  Trinity was

incorporated in Delaware and has its principal place of business in Texas.  Schuff Steel—Gulf Coast

and Schuff Steel were both incorporated in Delaware.  Schuff Steel has a principal place of business

in Arizona and Schuff Steel—Gulf Coast has a principal place of business in Texas.[4]  DII and Land

Coast were both incorporated in Louisiana and have their principal places of business in Louisiana.

[Doc. 1-12].

Plaintiffs are citizens of Louisiana and Texas.  Because several defendants are also citizens

of either Texas or Louisiana, this Court lacks subject matter jurisdiction unless Carboline meets the

heavy burden of proving the non-diverse defendants were improperly joined.

Improper joinder "can be established in two ways: (1) actual fraud in the pleadings of

jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-

diverse party in state court." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 (5th Cir. 2013)

(quoting *McKee v. Kansas City S. Ry. Co.*, 25 F.3d 329, 333 (5th Cir. 2004)).  In this case, there is

no allegation of actual fraud in the pleadings.  Thus, Carboline will prevail only if it has

demonstrated that Plaintiffs cannot possibly recover against each of the non-diverse defendants.

The improper joinder inquiry begins with an analysis of Plaintiffs' petition: "Ordinarily, if

---

[4] There does appear to be a dispute about Schuff Steel—Gulf Coast's citizenship.  Plaintiffs and
Carboline both suggest Schuff Steel—Gulf Coast has its principal place of business in Texas. [Docs.
1-12, ¶2(g); Doc. 1 at 14–15].  However, Schuff Steel states that Gulf Coast has its principal place
of business in Arizona.  Because all disputed facts must be construed in favor of remand, the Court
will assume Gulf Coast is a citizen of Texas.

a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id.* (quoting *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc)). The court may pierce the pleadings and conduct a summary judgment-type inquiry only upon a finding that the plaintiff has "misstated or omitted discrete facts that would determine the propriety of joinder."[5] *Id.* (quoting *Smallwood*, 385 F.3d at 573–74). Throughout the inquiry, the defendant bears the burden of showing that the plaintiff cannot possibly recover against the non-diverse defendants. *Id.*

Plaintiffs' first cause of action prays for a declaratory judgment against all defendants.[6] In relevant part, ¶59 of the petition provides:

AMC and TECON seek a declaration regarding the parties' respective rights and obligations relating to the Pyrocrete® 241 sold by CARBOLINE, including declarations that:

\*\*\*

c)   The problems currently being experienced with the Pyrocrete® 241 at the BP Project resulted from a product defect in the Pyrocrete® 241 for which CARBOLINE is responsible, and CARBOLINE is liable for all damages caused by that defect;

d)   AMC and TECON are neither responsible for the problems currently being experienced with the Pyrocrete® 241 at the BP Project nor liable for any damages caused thereby;

e)   AMC and TECON are neither responsible for any destruction or deterioration of or defects in the Pyrocrete® 241 and fireproofed steel at the BP Project nor liable to BP, SCHUFF, TRINITY, or any other party, whether in indemnity or otherwise, for any damages caused thereby, because AMC and TECON complied with all plans and

---

[5] There is no need to pierce the pleadings in this case. As explained below, the Court finds that Plaintiffs have a possibility of recovery against Trinity and Schuff. Although Plaintiffs suggest Schuff Steel—Gulf Coast is a citizen of Texas, and this statement could be construed as a misstatement that determines the propriety of joinder, the fact that Plaintiffs could recover against Trinity, another non-diverse defendant, moots the issue with Schuff Steel—Gulf Coast's citizenship.

[6] Plaintiffs assert a total of seven causes of action, however only the first cause of action implicates any of Carboline's co-defendants. Therefore, the other six need not be addressed in this memorandum ruling.

specifications requiring the use of Pyrocrete® 241, which plans and specifications they did not make or cause to be made and that instead were furnished to AMC and TECON by BP, SCHUFF, and/or TRINITY (La. R.S. § 9:2771); ....

[Doc. 1-12].

Carboline asserts that AMC and Tecon cannot prevail in state court for several reasons. First, Carboline contends Louisiana law does not allow a prospective tort-defendant to seek a declaratory judgment of non-liability against the potential tort-plaintiff. Second, Carboline argues Plaintiffs' request for a declaration that they are not liable in indemnity is not justiciable since the underlying liability has not yet been adjudicated. Finally, Carboline claims several defendants are nominal parties and therefore, those parties' citizenship should be ignored for the purpose of determining whether the Court has subject matter jurisdiction.

Louisiana law permits courts to issue a declaratory judgment declaring "rights, status, and other legal relations whether or not further relief is or could be claimed." La. Code Civ. Proc. art. 1871. This includes, but is not limited to, a party's rights under a contract. Art. 1872. "A contract may be construed either before or after there has been a breach thereof." Art. 1873.

Plaintiffs undoubtedly request a declaratory judgment of non-liability against several defendants. The nature of the liability Plaintiffs seek to disclaim, however, is not as narrow as Carboline would have this Court believe. In its notice of removal, Carboline represents that Plaintiffs do not have a substantive right of action against any of the defendants, and that BP Products has a cause of action in tort against the Plaintiffs. Accordingly, Carboline contends, Plaintiffs cannot receive a declaratory judgment of non-liability because Louisiana law does not permit a prospective tort defendant to obtain such a judgment against a prospective tort plaintiff. [Doc. 1 at 17].

7

By propounding this argument, Carboline overlooks an important detail: Trinity and Schuff potentially have a cause of action for breach of contract against the Plaintiffs. Plaintiffs allege AMC entered into contracts with Trinity and Schuff "to install Pyrocrete® 241 to structural steel members." [Doc. 1-12, ¶14]. Likewise, Tecon "entered into a contract with SCHUFF to install Pyrocrete® 241 to structural steel." [Doc. 1-12, ¶26]. Plaintiffs also allege that some of the Pyrocrete they applied has started to delaminate, and that Trinity and Schuff are threatening to hold Plaintiffs responsible. [Doc. 1-12, ¶¶44, 47].

"When a party fails to do the work he has contracted to perform, or does not execute it in the manner and at the time agreed, he shall be liable in damages for the losses that ensue from noncompliance with the contract." *Regions Bank v. Ark-La-Tex Water Gardens, L.L.C.*, 997 So.3d 734 (La. App. 2 Cir. 2008) (citing La. Code Civ. art. 2769). In *Regions Bank*, Judge Caraway writes separately to emphasize that "[n]egligent performance of a contract or poor workmanship by a business entity is not a tort which makes all the employee/manager actors of the business guilty of tortious conduct and personally liable." *Id.* at 742 (Caraway, J., concurring in part and dissenting in part). Specifically, Judge Caraway concurred in the majority's decision to hold the business entity liable for beach of contract when the defendant-entity untimely and unsatisfactorily performed its obligation under a construction contract. Judge Caraway dissented to the extent that a manager of an LLC could be liable in tort for breach of his professional duty.[7] *Id.* at 741.

---

[7] That the manager in *Regions Bank* was held personally responsible in tort is irrelevant here for several reasons. First, none of Plaintiffs' officers are party to this suit, so their potential personal liability is not at issue here. Second, whether Trinity or Schuff could file a suit in tort against Plaintiffs is irrelevant, since Plaintiffs have a contract with Trinity and Schuff. The mere fact that Plaintiffs have stated a cause of action for a declaratory judgment explaining their rights and liabilities under those contracts is sufficient to defeat a claim of improper joinder. The *Regions Bank* case is relevant here simply to explain that a business entity's liability for defective performance of

8

Plaintiffs each have a contract with a non-diverse defendant, and those defendants have

threatened to hold Plaintiffs responsible for allegedly defective performance under those contracts.

Accordingly, this Court cannot say that Plaintiffs have no chance of recovery against Trinity and

Schuff in Louisiana state court. It is entirely possible that, under Louisiana declaratory judgment

law, a court could issue a judgment providing that Plaintiffs did not breach their contracts with

Trinity and Schuff. Thus, this Court is compelled to find that Trinity and Schuff were not improperly

joined.

Carboline argues Plaintiffs' citation to Louisiana Revised Statutes section 9:2771

demonstrates that Plaintiffs seek a declaration of non-liability in tort.[8] [Doc. 85 at 3] (citing *Barabay*

*Prop. Holding Corp. v. Boh Bros. Const. Co., L.L.C.*, 991 So. 2d 74 (La. App. 1 Cir. 2008)). In

*Barabay*, the First Circuit Court of Appeal discusses § 9:2771 as a defense in the context of third

party tort claims. *Id.* at 79. However, the mere fact that § 9:2771 provides tort immunity in some

regards does not exclude a second form of immunity—that is, immunity from a suit for defective

performance of a contract. *See Allstate Enterprises, Inc. v. Brown*, 907 So. 2d 904, 913–14 (La.

---

a construction contract sounds in contract, not in tort.

[8] La. R.S. § 9:2771 provides:

> No contractor, including but not limited to a residential building contractor as defined
> in R.S. 37:2150.1(9), shall be liable for destruction or deterioration of or defects in
> any work constructed, or under construction, by him if he constructed, or is
> constructing, the work according to plans or specifications furnished to him which
> he did not make or cause to be made and if the destruction, deterioration, or defect
> was due to any fault or insufficiency of the plans or specifications. This provision
> shall apply regardless of whether the destruction, deterioration, or defect occurs or
> becomes evident prior to or after delivery of the work to the owner or prior to or after
> acceptance of the work by the owner. The provisions of this Section shall not be
> subject to waiver by the contractor.

App. 2 Cir. 2005) (discussing contractor immunity under § 9:2771 in a suit for substandard performance of a building contract). Accordingly, the Court finds that Carboline's argument that § 9:2771 supports a finding of improper joinder is not persuasive.

Carboline also claims that, even if Plaintiffs requested declarations are justiciable, its co-defendants were nevertheless improperly joined because Plaintiffs' declaratory judgment action is an improper use of Louisiana Code of Civil Procedure article 1871. [Doc. 61-1 at 17]. Carboline contends that, because Plaintiffs obviously tried to race to *res judicata* by filing this action on Saturday at midnight, their attempt to fence the BP Defendants into Louisiana state court is contrary to the purpose of a declaratory judgment. The cases Carboline cites in support of this proposition all relate to a prospective tort defendant fencing in the prospective tort plaintiff. *E.g.*, *Williams v. Manzella*, 21 So. 3d 1048 (La. App. 4 Cir. 2008); *Inland Dredging v. Sanchez*, 468 F.3d 864 (5th Cir. 2006); *BNSF Ry. v. Town of Vinton, Louisiana*, No. 06-0062, 2006 WL 2915217 (W.D. La. Oct. 6, 2006). Because Plaintiffs are able to seek a declaration of non-liability for breach of contract against two non-diverse defendants, these cases are inapposite.

As Trinity and Schuff were properly joined, the Court need not address whether Plaintiffs' requested declaration of non-liability as to Carboline's other co-defendants are justiciable. Likewise, the Court need not address Carboline's remaining arguments related to the "indemnitee defendants" or the allegedly "nominal parties."

10

### III. CONCLUSION

The Court finds that Trinity and Schuff were not improperly joined as defendants in this action. Because Trinity and Schuff were properly joined and defeat diversity, this Court lacks subject matter jurisdiction. Accordingly, Plaintiffs' motion to remand [Doc. 20] is hereby **GRANTED**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this the 23 day of August, 2013.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

11